# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. 20-cv-02766

**COLORADO UNION OF TAXPAYERS, INC.**, and
**COLORADO STOP THE WOLF COALITION,**

    Plaintiffs,

v.

**JENA GRISWOLD**, Colorado Secretary of State, in her official capacity, and
**JUDD CHOATE**, Director of Elections, Colorado Department of State, in his official capacity

    Defendants.

## COMPLAINT

### NATURE OF SUIT

1. Colorado requires non-profit organizations to obtain the government's approval before they are allowed to share their opinions on public policy issues. This is unconstitutional.

2. Colorado also hides the ball on when that approval is required. Instead, the state has chosen to investigate and punish non-profit groups based on the passing fancies of the Secretary of State and the bureaucrats in her office. This, too, is unconstitutional.

3. The First Amendment gives all Americans the right to speak freely on matters of public concern without obtaining government blessing or fearing government penalty.

4. The First Amendment also gives Americans the right to associate for lawful purposes with whomever they chose and to do so without fear of retaliation.

5. The Fourteenth Amendment protects Americans from laws that are so vague and arbitrary as to allow enforcement at the government's whim.

6. Colorado's campaign finance rules for statewide initiatives and referendums (collectively, "ballot issues") violate all these rights.

7. Plaintiffs therefore bring this suit challenging unconstitutional provisions of article XXVIII of the Colorado Constitution; the Fair Campaign Practices Act, Colo. Rev. Stat. §§ 1-45-101–18 (2019); and the Secretary of State's rules concerning campaign and political finance, Colo. Code Regs. § 1505-6 (2020). They seek declarations that these laws are unconstitutional, injunctions prohibiting Defendants from enforcing these unconstitutional laws, and compensation for their attorneys' fees and costs in bringing this suit.

### The Parties

8. Plaintiffs, Colorado Union of Taxpayers, Inc. (CUT), and the Colorado Stop the Wolf Coalition, engage in campaigns to inform the public about issues that Plaintiffs and their donors deem important. They regularly communicate to the public about these issues.

9. CUT intends to advocate for or against several statewide initiatives and one referendum on the November 3, 2020, ballot.

10. CUT is a Colorado non-profit organization that is exempt from taxation under I.R.C. § 501(c)(4) (2018). Its mission is to educate the public about the dangers of excessive taxation, regulation, and government spending. CUT was founded in 1976 and is Colorado's oldest taxpayer advocacy organization.

11. As part of its social welfare mission, CUT educates the public regarding the fiscal impact and desirability of bills introduced in the Colorado legislature. CUT reviews numerous pieces of legislation each session and issues a "support" or "oppose" rating for

each bill so reviewed. CUT's ratings are non-partisan and are based on whether the bill aligns with CUT's fiscally conservative philosophy.

12. Based on these ratings, CUT, on an annual basis, scores each Colorado legislator based on how his or her votes aligned with CUT's position on the rated bills.

13. CUT has been rating bills and scoring legislators for each session of the Colorado legislature since 1977.

14. Since 1989, CUT has also encouraged legislators and candidates for public office to sign the organization's ten-point pledge regarding fiscal discipline and the proper role of government. The organization publicizes which legislators and candidates have chosen to sign the pledge.

15. CUT's annual expenditures for these activities are generally around $2500. This includes the cost of its annual newsletter and other efforts to publicize its ratings and legislator scores, as well as the cost of its website, e-mail marketing, and other efforts to communicate with the public.

16. CUT also takes positions on ballot issues when appropriate and consistent with CUT's mission. The organization has taken such positions many times and intends to continue doing so in the future, given that ballot issues relating to the expenditure of public funds—which are well within the scope of CUT's mission—are a regular feature of statewide elections in Colorado.

17. The Coalition was formed in January 2019 for the express purpose of opposing forced wolf introduction in the state of Colorado. It accomplished this goal through research, public education and advocacy, on both the state and federal level. The organization includes Coloradans who live in rural areas and earn their livings as ranchers, guides, and others who earn their livelihood in industries that will be heavily affected by forced wolf introduction.

18. Plaintiffs are funded by donations from private individuals, couples, and families; and grants from other organizations. CUT also receives membership dues.

19. Defendant Griswold is the Secretary of State of the State of Colorado.

20. Among Defendant Griswold's duties is the administration of Colorado's campaign finance regime, including article XXVIII; the Fair Campaign Practices Act, and § 1505-6.

21. As part of those duties, Defendant Griswold receives complaints regarding violations of campaign finance laws and administers the registration system for organizations that advocate for or against ballot issues.

22. Defendant Choate is the Director of Elections in the Colorado Department of State.

23. Defendant Choate has management authority over the Division of Elections, including campaign finance complaints and enforcement. When the Secretary of State receives campaign finance complaints, Defendant Choate (or his designee) reviews those complaints for legal and factual sufficiency, and, if found sufficient, conducts further investigation and may refer the complaint to an administrative law judge for adjudication.

## OPERATIVE FACTS

24. Colorado law requires all "issue committees" to register with the Secretary of State and imposes additional requirements regarding the administration and operation of such committees. Issue committees that accept, contribute, or spend more than $5000 in a single election cycle to support or oppose ballot issues must also report their donors and expenditures.

25. An issue committee is any person or group that either has "a major purpose of supporting or opposing any ballot issue or ballot question" or "accepted or made contributions or expenditures in excess of two hundred dollars to support or oppose any

ballot issue or ballot questions." Colo. Const., Art. XXVIII, § 2(10)(a).

26. The Colorado General Assembly has created a methodology to determine "major purpose" as follows:

> [S]upport or opposition to a ballot issue or ballot question that is reflected by:
>
> > (I) An organization's specifically identified objectives in its organizational documents at the time it is established or as such documents are later amended; or
> >
> > (II) An organization's demonstrated pattern of conduct based upon its:
> >
> > > (A) Annual expenditures in support of or opposition to a ballot issue or ballot question; or
> > >
> > > (B) Production or funding, or both, of written or broadcast communication, or both, in support of or opposition to a ballot issue or ballot question.

Colo. Rev. Stat. § 1-45-103(12)(b).

27. The Secretary of State's rules state that a person or group must meet both the major purpose requirement and the contribution/expenditure amount to be considered an issue committee. Colo. Code. Regs. § 1505-6, Rule 1.9.

28. However, a federal court has previously held that there is no ambiguity in article XXVIII, section 12: the Colorado Constitution states the requirements in the disjunctive and, therefore, subjects a person or group to issue committee regulation even if they meet just one of the two requirements. *Coal. for Secular Gov't v. Williams*, 815 F.3d 1267, 1269 n.2 (10th Cir. 2016).

29. Neither of Plaintiffs' organizational documents specifically identify ballot issue advocacy as an organizational objective.

30. Nonetheless, CUT plans to speak about, oppose, and support statewide ballot issues both on the November 3, 2020, ballot and in the future.

31. To engage in debates about public policy issues and ballot issues fully and effectively, Plaintiffs must be able to communicate information and opinions to voters.

32. For 2020, CUT has declared its opposition or support for several ballot issues, including:

- Initiative 295, which would require voter approval for certain so-called "enterprises" that are presently excluded from the voter approval requirements of the state's Taxpayers Bill of Rights;
- Initiative 306, commonly referred to as the "Real Fair Tax," which would reduce Colorado's state income tax rate from 4.63% to 4.55%; and
- a veto referendum regarding Senate Bill 19-042, which entered Colorado into the National Popular Vote Interstate Compact.

CUT supports Initiatives 295 and 306 and opposes the National Popular Vote Interstate Compact.

33. CUT desires to spend $5000–$7000 expressly advocating for the passage or defeat (as appropriate) of these ballot issues. Such money would be spent on radio and internet advertisements urging voters to cast a vote for or against (as appropriate) these ballot issues.

34. CUT also desired to expressly advocate against a ballot issue in 2019: specifically, Proposition CC, which would have allowed the State to retain certain revenue that the Colorado Constitution otherwise would have required to be refunded to the taxpayers.

35. However, the vagueness and uncertainty of Colorado's campaign finance laws, the burdens of registering and reporting as an issue committee, and the potential consequences of non-compliance with the campaign finance regime deterred CUT from doing so. Instead, CUT made an in-kind donation to a registered issue committee that was

itself advocating against the ballot issue.

36. CUT would have preferred to speak on its own behalf regarding Proposition CC, so that it could have emphasized its concerns with the ballot issue in ways consistent with the organization's social welfare mission rather than surrendering control over the message to a different organization.

37. Unlike CUT, the Coalition does not—and has never intended to—advocate for or against a ballot issue on the 2020 November ballot. Nonetheless, the Coalition has become ensnared by Colorado's vague campaign finance laws.

38. In 2019, the Coalition raised approximately $115,000 and spent approximately $89,000.

39. Of that $89,000, the Coalition made two communications that asked voters to oppose a proposed ballot issue that had not yet been certified for the 2020 November ballot. One was a short video published on YouTube and available on the Coalition's website. This video received a total of 2021 views in 2019 and cost $675.

40. The second communication was an information card. The Coalition spent less than $800 on the card, but less than 10% of the cards were discarded and never distributed to the public.

41. In total, the two communications cost less than $1500.

42. At the time the Coalition made its communications, no ballot issue involving forced wolf introduction had been certified to the November 2020 ballot. Accordingly, the Coalition asked voters to oppose "Initiative 107." Because the proposal has not been certified, the term "Initiative 107" would not—and could not—appear on Colorado's November 2020 ballot.

43. The Coalition spent the other $87,000 on research, consultants, lobbying the state legislature, fundraising, and analysis of federal law, as well as general business

services such as accounting, legal work, and insurance.

44. Despite the Coalition's miniscule spending against a proposed ballot initiative, the Secretary has taken a hyper-aggressive approach to enforcement. Taking advantage of the inherent vagueness of the term "a major purpose," she argues that the Coalition has "a" major purpose of opposing a ballot issue. Accordingly the Secretary seeks to require the Coalition to register as an issue committee as of June 2019 and report its 2019 contributors and spending from that date.

45. For 2020, the Coalition expects to raise and spend approximately $450,000. The Secretary's enforcement actions, however, have damaged the Coalition's ability to raise funds and cost it a substantial amount in attorney fees.

46. Some of Plaintiffs' donors do not wish to have their identities reported to the government and they do not wish to have their names, addresses, donation amounts, and occupations made part of a publicly accessible online database such as the one maintained by the Secretary of State.

47. Donors are less likely to donate money to charities if they know their identities, occupations, and donation amounts will be disclosed to the government and made publicly available.

48. CUT would incur substantial cost in time and money to provide detailed reports to the government regarding their donors and expenditures.

### FIRST CAUSE OF ACTION: DEPRIVATION OF FREE SPEECH RIGHTS

49. Plaintiffs reassert the allegations in ¶¶ 24–48 as if fully set out herein.

50. State election laws that regulate speech or association must be narrowly drawn to advance a compelling state interest.

51. Colorado's issue committee rules are not narrowly drawn.

52. Under federal law, even organizations expressly advocating the election or

defeat of a particular candidate for office can only be regulated where such speech is *the* major purpose of the organization.

53. Colorado, however, regulates speech where express advocacy is only *a* major purpose of the organization.

54. Also, the State has imposed its speech regulation regime not just in the context of candidate advocacy, but with regard to ballot issue advocacy, where the state's interest is comparatively less.

55. Colorado's "*a* major purpose" standard subjects organizations to campaign finance regulation even when the majority of their efforts have nothing to do with express advocacy. Colorado has thus swept numerous organizations into its campaign finance regulatory regime that it may not constitutionally regulate.

56. The government lacks an interest in regulating the speech of a non-profit organization and requiring disclosure of its donors where communication with voters is not "*the* major purpose" of that organization.

57. Furthermore, Colorado lacks a compelling interest in regulating the speech of Plaintiffs.

58. The only interest justifying regulation in the ballot issue context is the public's informational interest (i.e., allowing voters to "identify those who (presumably) have a financial interest in the outcome of the election," *Sampson v. Buescher*, 625 F.3d 1247, 1259 (10th Cir. 2010)).

59. That informational interest is insufficient at the $200 level. The registration requirement essentially imposes a licensing regime on anything but the most minimal speech regarding ballot issues, and it does so without providing the public with any meaningful information. The registration requirement is therefore unconstitutional on its face.

60. Furthermore, the disclosure requirement is unconstitutional as applied here, where (1) CUT's expenditures would be, and the Coalition's expenditures are, a comparatively minor part of the campaign for or against any ballot issue, (2) their interest in the issue would be apparent to any reasonably informed voter even without the regulatory regime, and (3) they have a history of engagement in public policy outside of express advocacy for or against ballot issues.

### SECOND CAUSE OF ACTION: DEPRIVATION OF DUE PROCESS (ARBITRARINESS)

61. Plaintiffs reassert the allegations in ¶¶ 24–48 as if fully set out herein.

62. Even if the government has an interest in requiring issue committees to disclose their donors at some level, the $5000 level is arbitrary and lacks any rational basis.

63. In 2012, the Secretary of State promulgated a regulation that raised the disclosure threshold to $5000. The Secretary of State's rule was not based on any testimony or other evidence indicating a compelling need for disclosure at $5000.

64. The $5000 threshold in the 2012 regulation was later declared unconstitutional under the Colorado Constitution. Nonetheless, the legislature adopted the identical threshold of $5000 without any additional justification for that amount.

65. There are no legislative findings in Senate Bill 16-186 (the bill that added the $5000 reporting threshold) or in House Bill 19-1318 (which reenacted the threshold to remove a sunset requirement) to indicate why $5000 was chosen.

66. The legislature did not receive any testimony or other evidence providing a cogent argument for why the need for disclosure became compelling at the $5000 level. Rather, the legislature arbitrarily chose a number somewhat greater than the $3500 the Tenth Circuit had found insufficient in *Coalition for Secular Gov't v. Williams*, 815 F.3d 1267 (10th Cir. 2016).

67. Given the important speech and associational rights at stake, the legislature's arbitrary choice of a $5000 threshold violates Plaintiffs' rights to due process of law.

### THIRD CAUSE OF ACTION: DEPRIVATION OF DUE PROCESS (VAGUENESS)

68. Plaintiffs reassert the allegations in ¶¶ 24–48 as if fully set out herein.

69. Even if the Secretary of State's rules are correct that an organization must meet both the expenditure and the major purpose test before being subject to issue committee regulation, the government has provided no definition of "a major purpose" that allows an organization to determine beforehand if it will be subject to the registration, reporting, and disclosure requirements.

70. State law that is so vague as to give a person no fair warning of what he or she must do to comply with the law is an unconstitutional violation of the due process protections in the Fourteenth Amendment to the U.S. Constitution.

71. Colorado's definition of an "issue committee," which relies on a method for determining "major purpose" but provides no line to enable an organization to figure out which activities are "major" and which are minor, is unconstitutionally vague.

72. The Colorado Court of Appeals has previously declared the legislature's definition ambiguous, but the legislature has not amended it. Nor do the Secretary of State's current regulations add any saving substance to the definition.

73. This uncertainty has chilled CUT's exercise of its free speech rights in the past and continues to do so now.

74. This uncertainty has also resulted in the Coalition facing enforcement action from the Elections Division based on the Division's ad hoc balancing of the various statutory factors that go into a major purpose, untethered to any intelligible standard available to the Coalition prior to the enforcement action.

75. The Secretary's action has harmed the Coalition's ability to speak out on public

policy issues, and the enforcement action has required the Coalition to spend large sums defending itself in Colorado's campaign finance administrative proceedings.

76. The lack of an objective standard for what constitutes a major purpose chills speech through the threat of burdensome, repetitive litigation each time Plaintiffs (or any other group) seek to speak regarding a ballot issue.

## JURISDICTION AND VENUE

77. Plaintiffs' claims are asserted under 42 U.S.C. § 1983 (2018).

78. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 (2018) because § 1983 claims present a federal question.

79. Further, the Court has jurisdiction under 28 U.S.C. § 1343(a) (2018) because this action seeks redress for the deprivation of constitutionally protected rights and appropriate relief for the protection of those rights.

80. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) (2018) because Defendants reside in the District and all events or omissions giving rise to Plaintiffs' claims occurred here.

## PRAYER FOR RELIEF

81. Wherefore, Plaintiffs seek the following relief:

a. a declaration that the $5000 threshold for expenditure reporting and donor disclosure is unconstitutionally arbitrary;

b. a declaration that Colorado's definition of issue committee is unconstitutionally vague and does not provide speakers adequate forewarning of what activities require them to register and report as an issue committee;

c. a declaration that Colorado's campaign finance registration requirements (and attendant issue committee formation requirements) are unconstitutional as applied to issue committees that spend no more than $5000 on

express advocacy regarding ballot issues;

     d.     a declaration that Plaintiffs need not register as issue committees, report their expenditures, or disclose their donors

     e.     an injunction prohibiting Defendant Griswold from accepting complaints or otherwise enforcing any rule or law based on the "major purpose" test where the subject of the complaint either (a) has a history of public policy engagement outside of the ballot issue context or (b) has not spent the majority of its funds on express advocacy of the passage or defeat of a ballot issue;

     f.     an injunction preventing Defendant Choate from investigating or referring complaints or otherwise enforcing any rule or law based on the "major purpose" test where the subject of the complaint either (a) has a history of public policy engagement outside of the ballot issue context or (b) has not spent the majority of its funds on express advocacy of the passage or defeat of a ballot issue;

     g.     reasonable attorneys' fees (including expert fees) and costs under 42 U.S.C. § 1988 (2018); and

     h.     such other relief as the Court finds just and proper.

_____
**Daniel E. Burrows**
Public Trust Institute
98 Wadsworth Blvd. #127-3071
Lakewood, CO 80226
Telephone: (720) 588-2008
E-mail: dburrows@publictrustinstitute.org
Attorney for Plaintiff Colo. Union of Taxpayers, Inc.

s/ Scott E. Gessler
**Scott E. Gessler**
Gessler Law, LLC
1801 Broadway; Suite 507
Denver, CO 80202
Telephone: (720) 839-6637
E-mail: sgessler@gesslerlawfirm.com
Attorney for Plaintiff Colo. Stop the Wolf Coal.
SIGNED VIA VERBAL AUTHORIZATION