IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello

Civil Action No. 20-cv-02766-CMA-SKC

COLORADO UNION OF TAXPAYERS, INC., and COLORADO STOP THE WOLF COALITION,

Plaintiffs,

v.

JENA GRISWOLD, in her official capacity as Colorado Secretary of State, and JUDD CHOATE, in his official capacity as Director of Elections, Colorado Department of State,

Defendants.

## ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION

This matter is before the Court on Plaintiff Colorado Union of Taxpayers, Inc.'s Motion for Preliminary Injunction (Doc. # 17) ("Motion"). The Motion is currently set for a hearing on October 28, 2020. For the reasons set forth below, the Court now orders that the Motion is denied and the hearing is vacated.

### I.   BACKGROUND

This case presents a challenge to Colorado's Fair Campaign Practices Act, Article XXVIII of the Colorado Constitution, and the Colorado Secretary of State's campaign finance rules. (Doc. # 1, ¶ 7).

A. **PARTIES AND CLAIMS**

Plaintiffs are two political advocacy organizations who wish to advocate for or against ballot issues in the 2020 election.[1] (Doc. # 1, ¶¶ 8-23). Plaintiff Colorado Union of Taxpayers, or "CUT", describes itself as a "taxpayer advocacy organization" whose mission is "to educate the public about the dangers of excessive taxation, regulation, and government spending." (Doc. # 1, ¶ 10). Plaintiff Colorado Stop the Wolf Coalition ("Stop the Wolf") is a political advocacy and lobbying organization that "was formed in January 2019 for the express purpose of opposing forced wolf introduction in the state of Colorado." (Doc. # 1, ¶ 17). Both organizations wish to engage in ballot-issue advocacy to further their respective organizational missions.

Under Colorado law, however, any organization with "a major purpose" of supporting or opposing a ballot measure must register as an "issue committee" with the Colorado Secretary of State. *See* C.R.S. § 1-45-108(3.3) ("each issue committee shall register with the appropriate officer"); *see also* Colo. Const. Art. XXVIII, § 2(10)(a) defining "issue committee" as "any person . . . or any group . . . (I) [t]hat has a major purpose of supporting or opposing any ballot issue or ballot question; or (II) [t]hat has accepted or made contributions or expenditures in excess of two hundred dollars to support or oppose any ballot issue or ballot question"). Additionally, issue committees that accept or make contributions totaling more than $5,000 in a given election cycle

---

[1] The Complaint states that Stop the Wolf does not intend to advocate for or against a ballot issue on the 2020 November ballot, (Doc. # 1, ¶ 37), but Stop the Wolf states that it has already engaged in some advocacy opposing a *proposed* ballot initiative, Initiative 107. (Doc. # 1, ¶ 42).

2

must also disclose the sources and beneficiaries of their contributions and expenditures. C.R.S. § 1-45-108(1)(c)(I).

Plaintiffs now object to the issue-committee registration requirements. Plaintiffs are suing the Colorado Secretary of State and the Colorado Director of Elections to block enforcement of those requirements. Plaintiffs contend that (1) the registration and disclosure requirements are an unconstitutional infringement on their right to free speech and free association (Doc. # 1, ¶¶ 49-60); (2) the definition of the term "issue committee" is unconstitutionally vague (Doc. # 1, ¶¶ 68-76); and (3) the $5,000 threshold for disclosing donors and expenditures is impermissibly arbitrary. (Doc. # 1, ¶¶ 61-67).

### B. CUT'S PRELIMINARY INJUNCTION MOTION

Plaintiffs filed this lawsuit on September 11, 2020. (Doc. # 1). Six days later, on September 17, 2020, CUT filed a Motion for a Preliminary Injunction ("Motion"), which is the reason for today's hearing. (Doc. # 17). Stop the Wolf does not join CUT's Motion. (Doc. # 17).

CUT seeks an order prohibiting Defendants from (1) enforcing "any campaign finance rule or law against a small-scale issue committee"; (2) investigating "any complaint against an alleged issue committee involving a failure to register, disclose expenditures, or report donors"; and (3) investigating any complaint "or otherwise enforcing any rule or law based on the 'a major purpose' test." (Doc. # 17, p. 1).

The question before the Court is whether CUT has established that it is entitled to the preliminary injunction it seeks.

## II.     LEGAL STANDARD

"A preliminary injunction is an extraordinary remedy, the exception rather than the rule." *Free the Nipple-Fort Collins v. City of Fort Collins, Colorado*, 916 F.3d 792, 797 (10th Cir. 2019) (quoting *U.S. ex rel. Citizen Band Potawatomi Indian Tribe of Oklahoma v. Enter. Mgmt. Consultants, Inc.*, 883 F.2d 886, 888 (10th Cir. 1989)). Preliminary injunctions are intended to serve a limited purpose: "to preserve the relative positions of the parties until a trial on the merits can be held." *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 396 (1981). Thus, injunctive relief should be granted only when the moving party clearly and unequivocally demonstrates that such relief is necessary. *See Schrier v. Univ. of Colo.*, 427 F.3d 1253, 1258 (10th Cir. 2005). A party seeking a preliminary injunction must show: (1) the movant is substantially likely to succeed on the merits; (2) the movant will suffer irreparable injury if the injunction is denied; (3) the movant's threatened injury outweighs the injury the opposing party will suffer under the injunction; and (4) the injunction would not be adverse to the public interest. *Fish v. Kobach*, 840 F.3d 710, 723 (10th Cir. 2016).

Additionally, The Tenth Circuit has identified three types of preliminary injunctions that are "specifically disfavored": (1) injunctions that alter the status quo; (2) injunctions that require the nonmoving party to take affirmative action; and (3) injunctions affording the movant "all the relief that it could recover at a conclusion of a full trial on the merits." *Schrier v. Univ. of Colo.*, 427 F.3d 1253, 1259 (10th Cir. 2005) (internal quotations omitted); *see also Little v. Jones*, 607 F. 3d 1245, 1251 (10th Cir. 2010) (defining "mandatory preliminary injunction"). Where the movant seeks one of

these three types of disfavored injunctions, its motion "must be more closely scrutinized to assure that the exigencies of the case support the granting of a remedy that is extraordinary even in the normal course." *O Centro Espirita Beneficiente Uniao Do Vegetal v. Ashcroft,* 389 F.3d 973, 977 (10th Cir. 2004).

### III. ANALYSIS

#### A. PLAINTIFF SEEKS A DISFAVORED INJUNCTION

As an initial matter, the Court finds that CUT is seeking a disfavored injunction. The injunction CUT seeks would alter the status quo by prohibiting the State of Colorado from enforcing certain campaign-finance laws that it currently has the ability to enforce. (*See* Doc. # 17, p. 1). Although CUT argues that it "seeks merely to press pause on campaign finance enforcement in a discrete set of circumstances," (Doc. # 31, p. 2), the act of "press[ing] pause" would effectively rewrite the current statutory scheme governing ballot-issue campaign finance. CUT points out that an injunction is intended to preserve the "last uncontested status" between the parties. (Doc. # 31, p. 2). The Court finds that the last uncontested status was the situation that existed for four years before CUT filed this lawsuit: the State having the power to enforce its campaign finance laws relating to issue committees. Therefore, the Court concludes that CUT seeks a disfavored injunction, and the Court must closely scrutinize CUT's Motion "to assure that the exigencies of the case" support CUT's request. *O Centro*, 389 F. 3d at 977.

## B. IRREPARABLE HARM

The Court must begin by considering whether CUT has established that it will suffer irreparable injury if the injunction is denied. It is well-established that "a showing of probable irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction." *Dominion Video Satellite, Inc. v. Echostar Satellite Corp.*, 356 F.3d 1256, 1260 (10th Cir. 2004). Therefore, "the moving party must first demonstrate that such injury is likely before the other requirements for the issuance of an injunction will be considered." *Id.* (quoting *Reuters Ltd. v. United Press Int'l, Inc.*, 903 F.2d 904, 907 (2d Cir. 1990)). Accordingly, if the movant fails to meet its burden of establishing irreparable injury, courts "need not address the remaining preliminary injunction factors." *N.M. Dep't of Game and Fish v. U.S. Dep't of the Interior*, 854 F.3d 1236, 1249 (10th Cir. 2017) (citing *People for the Ethical Treatment of Prop. Owners v. U.S. Fish and Wildlife Serv.*, 852 F.3d 990, 1008 (10th Cir. 2017) ("If it is not necessary to decide more, it is necessary not to decide more.")); *see also Conry v. Estate of Barker*, No. 14-cv-02672-CMA-KLM, 2017 WL 5952709, at *1 (D. Colo. 2017) (same).

"A plaintiff suffers irreparable injury when the court would be unable to grant an effective monetary remedy after a full trial because such damages would be inadequate or difficult to ascertain." *Awad v. Ziriax*, 670 F.3d 1111, 1131 (10th Cir. 2012) (quoting *Dominion*, 269 F.3d at 1156). The party seeking injunctive relief must show that the harm is certain as opposed to theoretical, great, and "of such imminence that there is clear and present need for equitable relief." *Schrier v. Univ. of Colo.*, 427 F.3d at 1267 (emphasis added); *Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1190 (10th Cir.

2003). Courts have repeatedly held that a party's delay in seeking injunctive relief undermines that party's irreparable harm argument. *See, e.g. Krueger Int'l, Inc. v. Nightingale Inc.*, 915 F. Supp. 595, 613 (S.D.N.Y. 1996) (Sotomayor, J.) ("I decline to manufacture a sense of urgency that is not supported by plaintiff's own conduct."); *see also Wreal, LLC v. Amazon.com, Inc.*, 840 F.3d 1244, 1248 (11th Cir. 2016) ("a party's failure to act with speed or urgency in moving for a preliminary injunction necessarily undermines a finding of irreparable harm."); *accord GTE Corp. v. Williams*, 731 F.2d 676, 678 (10th Cir. 1984) (delay in seeking injunctive relief undercuts irreparable harm argument).

Plaintiffs' delay in initiating this case and seeking an injunction weighs heavily against the issuance of a preliminary injunction. By CUT's own admission, it has a long history of political advocacy in Colorado. According to Plaintiffs' Complaint, "CUT was founded in 1976 and is Colorado's oldest taxpayer advocacy organization." (Doc. # 1, ¶ 10). "CUT has been rating bills and scoring legislators for each session of the Colorado legislature since 1977." (Doc. # 1, ¶ 13). Additionally, "CUT takes positions on ballot issues when appropriate and consistent with CUT's mission. This organization has taken such positions <u>many times</u> and intends to continue doing so in the future, given that ballot issues relating to the expenditure of public funds – which are well within the scope of CUT's mission – are a <u>regular feature</u> of statewide elections in Colorado." (Doc. # 1, ¶ 16 (emphasis added)). In fact, CUT asserts that "CUT also desired to expressly advocate against a ballot issue in 2019" but was "deterred" from doing so by Colorado's issue-committee registration requirements. (Doc. # 1, ¶¶ 34-35). Thus, it is

7

clear from the record that CUT has long been aware of Colorado's issue-committee registration requirements and their impact on CUT's activities. Nevertheless, it waited until the eve of the 2020 election to bring this action. This delay suggests a manufactured urgency rather than a true threat of irreparable harm.

CUT argues, however, that it could not have been expected to know that "harm was imminent" until "the date the initiative actually qualified for the ballot" – in this case, mid-August. (Doc. # 31, p. 6). This argument is unavailing.

The "harm" CUT is claiming in this case is the choice between either complying with the Fair Campaign Practices Act or foregoing ballot-issue advocacy in this election. (Doc. # 17, ¶ 52) ("Without the preliminary injunctions requested herein, CUT faces the choice of either (a) complying with unconstitutional laws . . . or (b) muzzling itself and bypassing participation in public debate . . . ."). The record reveals that CUT was aware of this choice long before mid-August. Indeed, CUT claims that it faced the same choice in the 2019 election. (Doc. # 1, ¶ 35).[2] Additionally, CUT states that ballot initiatives like the ones at issue in this case are a "regular feature" of Colorado elections. (Doc. # 1, ¶ 16). Although CUT claims that it could not have known that "harm was imminent" until a few weeks before ballots were issued in this election (Doc. # 31, p. 6), it is already predicting that it will suffer the same "imminent harm" in next year's election:

> [T]he ending of the 2020 election cycle does not end the chilling effect on CUT's future speech. Four ballot issue

---

[2] It is unclear from the record when CUT first became aware of the ballot initiatives at issue in this case. However, under, C.R.S. § 1-45-108(7)(a)(I) "a matter is considered a ballot issue" for purposes of issue-committee registration when "[a] title for the matter has been designated." The parties agree that title was designated on April 15, 2020 for the relevant ballot issues. (Doc. #31, p. 5; Doc. # 24, p. 11).

> proposals for the 2021 election have already been submitted to the state's Legislative Counsel . . . . [A]ny statewide election next year is almost certain to feature issues that relate to CUT's core mission."

(Doc. # 31, pp. 4-5).

Thus, it is clear CUT was aware of the grounds for this lawsuit long before mid-August. CUT has not provided any valid reason for waiting until the eve of the election to file its lawsuit and bring this Motion.

Further, even if CUT had not unreasonably delayed its request for an injunction, it has still not presented sufficient evidence to demonstrate irreparable harm. CUT's advocacy budget for this election cycle is "approximately $3,500." (Doc. # 31, p. 3). Thus, to engage in ballot-issue advocacy, CUT would likely be required to register as a small-scale issue committee. C.R.S. § 1-45-108(1.5). By CUT's own admission, the small-scale issue committee registration rules would not require it to do anything that it does not already do voluntarily:

> To satisfy the registration requirement, a small-scale issue committee must provide the Secretary of State with its contact information, a statement of its purpose . . . financial institution information, and the name and contact information for its registered agent. . . . [N]early all of this information (and more) can be gleaned simply from an organization's website or by a little diligence from any interested citizen. . . . This is certain the case with CUT. Not only does the organization's website provide for phone, web form, and e-mail contact, it also lists the group's president and board of directors, [and] has copies of its newsletters back to 1977 . . . .

(Doc. # 17, ¶ 20, n. 7)

9

Thus, CUT has failed to show how it would be irreparably harmed if it were required to register as an issue committee.

Additionally, CUT states that it "has already spent its advocacy budget for his election cycle." (Doc. # 31, p. 3). Although the record is not entirely clear on this point, it appears CUT was able to do so without "either (a) complying with unconstitutional laws . . . or (b) muzzling itself and bypassing participation in public debate." (Doc. # 17, ¶ 52). Therefore, it appears CUT did not need a preliminary injunction after all.

Because CUT has failed meet its burden of establishing irreparable injury, the Court "need not address the remaining preliminary injunction factors." *N.M. Dep't of Game and Fish* 854 F.3d at 1249 (10th Cir. 2017).

## IV.    CONCLUSION

For the foregoing reasons this Court concludes that CUT has failed to demonstrate that it will suffer irreparable harm if an injunction is not issued. Therefore, the Motion for a Preliminary Injunction (Doc. # 17) is DENIED. The hearing on this matter, which is scheduled to take place on October 28, 2020, is VACATED.

DATED:  October 27, 2020

BY THE COURT:

CHRISTINE M. ARGUELLO
United States District Judge