IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 20-cv-02766-CMA-SKC

COLORADO UNION OF TAXPAYERS, INC.,

 Plaintiff,

v.

JENA GRISWOLD, Colorado Secretary of State, in her official capacity, and
JUDD CHOATE, Director of Elections, Colorado Department of State, in his official capacity,

 Defendants.

**FINAL PRETRIAL ORDER**

**1. DATE AND APPEARANCES**

The Court has reviewed the Parties' proposed Final Pretrial Order, which was e-mailed to the Court's Chambers but not e-filed, and finds convening the Final Pretrial Conference set for September 20, 2021, is unnecessary. The Court, therefore, VACATES the Final Pretrial Conference. The Parties are ORDERED to review and follow Judge Arguello's Practice Standards as they relate to the proper form and submission of witness and exhibit lists, and other matters relating to the trial. It is FURTHER ORDERED that, no later than September 20, 2021, counsel and pro se parties shall confer and one party shall request trial dates by emailing Judge Arguello's Chambers (Arguello_Chambers@cod.uscourts.gov), with a copy to opposing counsel. The email should include the relevant case number and the anticipated length of trial, as well as mutually acceptable proposed trial dates within three to four months of the date of the vacated Final Pretrial Conference. Failure to comply with this Order may result in the

Court unilaterally setting the trial date.

## 2.     JURISDICTION

Defendants contend that the Court lacks subject matter jurisdiction on the ground that the Plaintiff lacks Article III standing, for the reasons stated in Defendants' Motion for Summary Judgment (ECF No. 76), Defendants' Response to Plaintiff's Motion for Summary Judgment (ECF No. 79) and Defendants' Reply in Support of Their Motion for Summary Judgment (ECF No. 88). Specifically, Defendants principally maintain that, under *Rio Grande Foundation v. City of Santa Fe*, 7 F.4th 956 (10th Cir. 2021), Plaintiff has not adequately alleged or supported an injury-in-fact sufficient to maintain its claims for prospective relief.

Aside from Defendants' objection to Plaintiff's standing, the parties agree that the Court has jurisdiction over the subject matter of this suit both as a federal question case, 28 U.S.C. § 1331 (2018), and as a case seeking redress for the deprivation of constitutionally protected rights, *id.* § 1343(a)(3).

## 3.     CLAIMS AND DEFENSES

a.   *Plaintiff*:

Plaintiff asserts that Colorado's campaign finance regime is unconstitutional in how it treats organizations—including Plaintiff—that speak about ballot issues (referred to in the law as "issue committees"). From that broad assertion, Plaintiff makes four specific claims:

1. The "a major purpose" standard that Colorado uses to determine who qualifies as an issue committee is (i) unconstitutionally overbroad and (ii) unconstitutionally vague.
2. Colorado's regulation of "small-scale issue committees" (i.e., those committees that spend less than $5000 on ballot issue advocacy) is

       unconstitutional because that regime's requirements are not substantially related to a sufficiently important governmental interest. Rather, the government imposes a burdensome licensing regime on such committees that provides almost no measurable benefit in support of the State's alleged "informational interest."

3. The $5000 trigger for expanded disclosure obligations is unconstitutional because it is neither narrowly tailored nor substantially related to an important government interest. Rather, the threshold imposes significant burdens on a host of groups whose expenditures are a very minor part of spending on ballot issues.

4. Colorado's choice to regulate speech on initiatives that have not qualified (and may never qualify) for the ballot is unconstitutional insofar as it reaches persons or groups who are not circulating petitions or otherwise seeking to qualify an issue for the ballot. There is no constitutionally acceptable justification for such a far-reaching regime.

b. *Defendants*:

Defendants' defenses, affirmative and otherwise, against Plaintiffs' claims are explained at length in Defendants' briefing on the parties' cross-motions for summary judgment. *See* Defs.' Mot. for Summ. J. (Doc. 76); Defs.' Resp. to Pl.'s Mot. for Summ. J. (Doc. 79); Defs.' Reply in Support of Their Mot. for Summ. J. (Doc. 88). Defendants summarize those defenses here, but neither waive nor modify the arguments advanced in their summary judgment briefing.

    1. *CUT lacks standing to maintain its four causes of action*.

CUT seeks only prospective relief, namely declarations and injunctions prohibiting future enforcement of various aspects of Colorado's campaign finance regulatory scheme. *See* 2d Am. Compl. (Doc. 66). Because CUT seeks prospective relief, it "must show a continuing injury." *Dias v. City & Cty. of Denver*, 567 F.3d 1169, 1176 (10th Cir. 2009). It cannot do so here.

This case is on all fours with *Rio Grande Foundation v. City of Santa Fe, N.M.*, --- F.4th ---, 2021 WL 3361548, at *2-3 (10th Cir. 2021). There, the Tenth Circuit held that a plaintiff seeking prospective relief cannot allege chilled speech as grounds to establish an injury-in-fact where it "fully intends to continue speaking." *Id.* at *3. The evidentiary record here establishes that CUT fully intends to continue speaking. *See, e.g.*, Pl.'s MSJ Appx. at 50 – Neilson Dec. at 4 ("I doubt that 2020 will be the last election in which CUT takes a position on ballot issues or seeks to expressly advocate the passage or defeat of a particular ballot issue."). Thus, CUT has not established an injury-in-fact, and therefore lacks standing to maintain this action.

2. *CUT's first cause of action fails because the unrebutted evidence establishes that Colorado's regulation of small-scale issue committees satisfies exacting scrutiny.*

CUT's first cause of action challenges Colorado's regulation of small-scale issue committees. But the unrebutted evidence establishes Colorado's interest in regulating those committees. That same uncontested record also demonstrates that small-scale issue committees do not find Colorado's regime burdensome. In fact, Colorado's narrowly tailored approach exempts small-scale issue committees from any financial reporting whatsoever; thus ensuring that Colorado's issue committee regime

simultaneously exempts most committees from ongoing reporting requirements while simultaneously capturing the vast majority of spending to support or oppose ballot measures. The regulation regime satisfies exacting scrutiny, and CUT's first cause of action fails.

3. *CUT's second cause of action fails because Colorado's $5,000 threshold between small-scale issue committees and regular issue committees is not wholly without rationality.*

Under long-standing Supreme Court precedent, disclosure thresholds in the campaign finance context are "a judgment decision" best left to legislatures, and should be upheld unless they are "wholly without rationality." *Buckley v. Valeo*, 424 U.S. 1, 83 (1976). Colorado's threshold not only survives this standard, but also the exacting scrutiny standard which Plaintiff argues the Court should apply. This threshold is among the highest in the country, and is well-supported both by the evidence existing at the time of its enactment and current circumstances. *See* Defs.' Resp. to Pl.'s Mot. for Summ. J. (Doc. 79) at 11-12.

4. *CUT's third cause of action fails because Colorado's "a major purpose" test is neither unconstitutionally vague, nor facially overbroad.*

In its Complaint, CUT pleaded its third cause of action as a vagueness challenge. 2d Am. Compl. (Doc. 66) ¶¶ 68-74, 82.c. CUT's challenge fails because—as multiple Colorado courts have concluded—the "a major purpose" standard is not unconstitutionally vague. *See Cerbo v. Protect Colo. Jobs, Inc.*, 240 P.3d 495, 504 (Colo. App. 2010); *Indep. Inst. v. Coffman*, 209 P.3d 1130, 1139 (Colo. App. 2008). Determining an entity's major purposes may require a fact-specific inquiry into the organization's formation documents and its practices, but the term is easily understood.

*See also Free Speech v. FEC*, 720 F.3d 788, 797-98 (10th Cir. 2013) (affirming a "fact-intensive" approach to determining an organization's major purpose).

In its summary judgment briefing, CUT attempted to add a claim that "Colorado's 'a major purpose' standard is facially overbroad." Pl.'s Mot. for Summ. J. (Doc. 77) at 5. The Court should not consider this belated claim. But even if it does, "judged in relation to [its] plainly legitimate sweep," lawful applications of Colorado's "a major purpose" test far outnumber any unlawful applications, even assuming the latter exist. *See Ams. for Prosperity Found. v. Bonta*, 141 S. Ct. 2373, 2387 (2021).

> 5. *CUT's fourth cause of action fails because the unrebutted evidence establishes Colorado's interest in regulating issue committees before a ballot measure officially qualifies for the ballot.*

CUT concedes that Colorado "plainly has interests in regulating groups that are circulating petitions or otherwise seeking to qualify an issue for the ballot." Pl.'s Resp. to Defs.' Mot. for Summ. J. (Doc. 80) at 20. It follows, then, that Colorado also has an interest in regulating groups that encourage voters *not* to support a circulating petition. And the undisputed facts show that some entities spend significant sums doing so. *See* Defs.' Resp. to Pl.'s Mot. for Summ. J (Doc. 79) at 19. Thus, Colorado's regulation of these committees is not overbroad.

## 4.   STIPULATIONS

a.  The Colorado Union of Taxpayers (CUT) is a non-profit organization. It was founded in 1976. Its mission is to educate the public about and advocate for fiscally conservative government.

b.  Each legislative session, CUT reviews numerous pieces of proposed legislation and issues a "support" or "oppose" rating for each bill so reviewed. Based on these

      ratings, CUT calculates a score for each Colorado legislator. These scores and bill ratings are published in a newsletter and posted on the organization's website. CUT has been rating bills and scoring legislators since 1977.

c. CUT also encourages legislators and candidates to sign a pledge regarding fiscal discipline and CUT's view of the proper role of government. The organization publicizes which legislators and candidates have signed the pledge.

d. Some years, CUT advocates for or against certain initiatives and referenda placed before Colorado voters. Some years, CUT does not advocate for or against any initiatives or referenda.

e. Support or opposition to ballot issues or ballot questions has never been a specifically identified objective in CUT's organizational documents.

f. In 2019, CUT spent $5001 advocating against Proposition CC. Such spending consisted entirely of an in-kind donation of radio ads to No on CC, a registered issue committee.

g. The Proposition CC ads did not contain CUT's name anywhere. Because they were an in-kind donation, the disclaimer instead stated that they were paid for by No on CC. However, the substantive content of the advertisement was the same as if it had been done in CUT's name.

h. CUT has never registered as an issue committee or as a small-scale issue committee.

i. CUT's expenditures on ballot issue advocacy were about 38% of its total expenditures in 2019 and about 49% in 2020.

j. As of September 13, 2021, CUT has not been subject to an enforcement action for failure to register as an issue committee or a small-scale issue committee, or for failure to report its contributions and expenditures.

k.  The Colorado State Ballot Information Booklet, or "Blue Book," directs voters to the Secretary of State's website to view information concerning issue committees that support or oppose the measures on the ballot.

l.  Issue committees are listed on the Secretary of State's website next to the ballot issues they support or oppose.

m.  Issue committees and their reports of contributions and expenditures can be located on the TRACER database, which is publicly available on the Secretary of State's website.

n.  In 2018, registered issue committees reported total expenditures of more than $77 million.

o.  In 2019, all registered issue committees together reported total expenditures of approximately $15 million.

p.  The Secretary listed four registered issue committees that supported or opposed Proposition CC in 2019. Those committees and their total expenditures were:
- Great Education Colorado: $146,774.47
- Coloradans for Prosperity: $4,378,000.05
- Americans for Prosperity: $1,651,361.19
- No on CC: $182,388.47

Great Education Colorado and Coloradans for Prosperity supported Proposition CC. Americans for Prosperity and No on CC opposed it.

q.  In 2020, all registered issue committees together reported total expenditures of approximately $60 million.

r.  The Secretary listed six issue committees that supported or opposed Propositions 116 and/or 117 in 2020. Those committees and their total expenditures were:
- Americans for Prosperity Colorado Issue Committee: $761,919.27

- Energize Our Economy: $11.10
- Voter Approval of Fees: $427,627.99
- Protect Colorado's Recovery: $2,075,391.95
- Fair Tax Colorado: $762,942.25
- Earthworks Action Fund: $61,625.71.

Americans for Prosperity Colorado Issue Committee supported both. Protect Colorado's Recovery and Fair Tax Colorado opposed both. Energize Our Economy supported Proposition 116. Voter Approval of Fees supported Proposition 117. Earthworks Action Fund opposed Proposition 117.

s. In 2020, CUT spent $3495 on radio advertisements advocating in favor of Propositions 116 and 117. Those advertisements announced they were "paid for by the Colorado Union of Taxpayers."

t. In 2018, 2019, and 2020, more than 99% of all reported contributions and expenditures were made to or by issue committees that reported more than $5,000 in contributions or expenditures.

u. In 2018 and 2020, approximately 99% of all reported contributions and expenditures were made to or by issue committees that reported more than $50,000 in contributions or expenditures. In 2019 it was 96%.

v. In 2018, 2019, and 2020, 33% or less of the active issue committees (including small-scale issue committees) raised or spent more than $5,000 in any of those years.[1]

---

[1] If this matter heads to trial, the parties may make additional stipulations regarding reported contributions and expenditures, similar to the undisputed facts regarding issue committee activity in 2018, 2019, and 2020 stated on page 4 of Defendants' Motion for Summary Judgment (ECF No. 76).

## 5. PENDING MOTIONS

Cross-motions for summary judgment are pending. Briefing for both sides was filed as follows:

Motions: July 23, 2021 (ECF Nos. 76 & 77)

Responses: August 13, 2021 (ECF Nos. 79 & 80)

Replies: August 27, 2021 (ECF Nos. 88 & 89)

Amicus briefs in support of Defendants' motion were filed by the Brennan Center for Justice at NYU School of Law on August 20, 2021 (Doc. 82) and by the Campaign Legal Center on August 24, 2021 (Doc. 87).

## 6. WITNESSES

The parties will call the following non-expert witnesses at trial. (They do not anticipate calling any retained expert witnesses.)

*Plaintiff*

**(1) witnesses who will be present at trial:**

*Marty Neilson*, address previously disclosed

> Ms. Neilson will testify regarding CUT's history and activities (including activity involving advocacy for or against ballot issues).

*Katie Kennedy*, address previously disclosed

> Ms. Kennedy will testify regarding the burdens that Colorado's ballot issue regulation regime places on organizations.

*Tom Bjorklund*, address previously disclosed

> Mr. Bjorklund will testify regarding the costs, burdens, and damages that can result from a campaign finance enforcement action.

*Suzanne Taheri*, address previously disclosed

> Ms. Taheri will provide summary information regarding both issue committee activity

recorded in the Secretary of State's TRACER database and records regarding proposed and qualified ballot issues. Ms. Taheri may also testify regarding the alleged justification for the $5000 threshold in the issue committee laws.

**(2) witnesses who may be present at trial if the need arises:**

*Kristine Reynolds*, address previously disclosed

Ms. Reynolds may testify to summarize information in the Secretary of State's TRACER database regarding issue committee activity in the recent past.

**(3) witnesses where testimony is expected to be presented by means of a deposition and, if not taken stenographically, a transcript of the pertinent portions of the deposition testimony:**

None.

*Defendants*

**(1) Witnesses who will be present at trial:**

*Marty Neilson*, Address previously disclosed

Ms. Neilson will testify regarding CUT's history and activities, as well as CUT's plans for future advocacy.

*Steve Bouey*, Address previously disclosed

Mr. Bouey will testify concerning Colorado's issue committee laws and campaign finance enforcement system.

*Stanley Garnett*, Address previously disclosed

Mr. Garnett will testify concerning the effect of Colorado's regulation of small-scale issue committees on his small-scale issue committee.

*Katherine Kennedy*, Address previously disclosed

Ms. Kennedy will testify concerning Colorado's issue committee laws and their effect on issue committees, as well as on the activities of issue committees.

**(2) Witnesses who may be present at trial if the need arises:**

*Cheri Breeman*, Address previously disclosed

Ms. Breeman may testify concerning the effect of Colorado's regulation of small-scale issue committees on his small-scale issue committee.

*Bergen Tjossem*, Address previously disclosed

Mr. Tjossem may testify concerning the effect of Colorado's regulation of small-scale issue committees on his small-scale issue committee.

*Kristine Reynolds*, Address previously disclosed

Ms. Reynolds may testify concerning Colorado's issue committee laws and campaign finance enforcement system.

*John Morse*, Address previously disclosed

Mr. Morse may testify concerning Colorado's issue committee laws and their effect on issue committees, as well as on the activities of issue committees.

**(3) Witnesses where testimony is expected to be presented by means of a deposition and, if not taken stenographically, a transcript of the pertinent portions of the deposition testimony:**

None.

### 7. EXHIBITS

| Plaintiff's Exhibits ||
| --- | --- |
| *Description* | *Stipulated?* |
| CUT 2019 Newsletter | Y |
| CUT 2020 Newsletter | Y |
| CUT 2019 Profit & Loss Statement | Y |
| CUT 2020 Profit & Loss Statement | Y |

| | |
|---|---|
| E-mail from Marty Neilson to Mary O'Malley, Oct. 16, 2019 | |
| Defs.' Resp. to 1st Set of Interrogs. & Requests for Production | Y |
| Records Produced as SOS000001–02 | |
| Mot. to Dismiss, *In re United for Colorado* | |
| Order Denying Mot. to Dismiss, *In re United for Colorado* | |
| Placeholder for Fed. R. Evid. 1006 Summary Exhibits[2] | |
| **Defendants' Exhibits** | |
| *Description* | *Stipulated?* |
| Small-Scale Issue Committee Registration and Termination (SOS003320) | Y |
| Small-Scale Issue Committee List (SOS003321) | Y |
| Issue Committee Financials (SOS003319) | Y |
| 2020 iHeart Media Invoices (CUT0109–17) | Y |
| 2020 Radio Advertisement Scripts | |
| Memorandum from S. Bouey to Sec'y Gessler, Feb. 25, 2011 | Y |
| Memorandum from P. Nelson to Sec'y Gessler, Feb. 24, 2011 | Y |
| Memorandum from C. Heppard to Sec'y Gessler, Feb. 25, 2011 | Y |
| Committee Registration Form (Ex. 1 to Bouey Declaration) | Y |
| Small-Scale Issue Committee Registration Form (Ex. 2 to Bouey Declaration) | Y |
| Issue Committee Registration Form (Ex. 1 to Kennedy Deposition) | |
| CUT Board Minutes, Oct. 26, 2019 | Y |

---

[2] Plaintiffs anticipate summary exhibits related to initiative filings and results 2003–20 and Issue Committee Financials 2018–20.

| Fair Term Limits for DA Termination E-mail | Y |
|---|---|
| Placeholder for Fed. R. Evid. 1006 Summary Exhibits[3] | |

For the purposes of this Pre-Trial Order, the anticipated exhibits have been divided into "Plaintiff's Exhibits" and "Defendants' Exhibits" so as to make clear who will be producing those exhibits to the other side. However, in compliance with CMA Civ. Practice Standards 43.1B(a), those designations will be removed prior to the list's submission in advance of the Final Trial Preparation Conference.

Copies of listed exhibits must be provided to opposing counsel no later than thirty days before trial. The objections contemplated by Fed. R. Civ. P. 26(a)(3) shall be filed with the clerk and served no later than fourteen days after the exhibits are provided.

## 8. DISCOVERY

Discovery has been completed.

## 9. SPECIAL ISSUES

None.

## 10. SETTLEMENT

a. Counsel for the parties met by telephone on December 1, 2020, to discuss in good faith the settlement of the case.

b. The parties were promptly informed of all offers of settlement.

c. Counsel for the parties *do not* intend to hold future settlement conferences.

d. It appears from the discussion by all counsel that there is no possibility of settlement.

e. Counsel for the parties considered ADR in accordance with D.C.COLO.LCivR. 16.6.

---

[3] Defendants anticipate several summary exhibits regarding issue committee financials, based on the documents disclosed as SOS003319, SOS003320, and SOS003321.

### 11. OFFER OF JUDGMENT

Counsel acknowledge familiarity with the provisions of Fed. R. Civ. P. 68. Counsel have discussed it with the clients against whom claims are made in this case.

### 12. EFFECT OF FINAL PRETRIAL ORDER

Hereafter, this Final Pretrial Order will control the subsequent course of this action and the trial, and may not be amended except the consent of the parties and approval by the Court or by order of the Court to prevent manifest injustice. The pleadings will be deemed merged herein. This Final Pretrial Order supersedes the Scheduling Order. In the event of ambiguity in any provision of this Final Pretrial Order, reference may be made to the record of the pretrial conference to the extent reported by stenographic notes and to the pleadings.

### 13. TRIAL AND ESTIMATED TRIAL TIME; FURTHER TRIAL PREPARATION AND PROCEEDINGS

Trial is to the Court.

Estimated Time: 2 Days

Situs of Trial: Federal District Court, Denver, CO

Any Other Orders Pertinent to the Trial Proceedings: None.

DATED:  September 17, 2021

BY THE COURT

_____
S. Kato Crews
U.S. Magistrate Judge

APPROVED:

| | |
|---|---|
| s/ Daniel E. Burrows | s/ Michael T. Kotlarczyk |
| ***Daniel E. Burrows*** | ***Michael T. Kotlarczyk*** |
| Public Trust Institute | ***Peter G. Baumann*** |
| 98 Wadsworth Blvd. #127-3071 | Colorado Department of Law |
| Lakewood, CO 80226 | 1300 Broadway, 6th Floor |
| Telephone: (720) 588-2008 | Denver, CO 80203 |
| E-mail: dburrows@publictrustinstitute.org | Telephone: (720) 508-6187 |
| Attorney for Plaintiff | E-mails: Mike.Kotlarczyk@coag.gov |
| | Peter.baumann@coag.gov |
| | Attorneys for Defendants |