**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello**

Civil Action No. 20-cv-02766-CMA-SKC

COLORADO UNION OF TAXPAYERS, INC.,

      Plaintiffs,

v.

JENA GRISWOLD, in her official capacity as Colorado Secretary of State, and
JUDD CHOATE, in his official capacity as Director of Elections, Colorado Department of State,

      Defendants.

---

**ORDER DISMISSING PLAINTIFF'S CLAIMS FOR
LACK OF SUBJECT MATTER JURISDICTION**

---

This matter is before the Court on dueling motions for summary judgment filed by Defendants Colorado Secretary of State and the Colorado Director of Elections (collectively "Defendants") (Doc. # 76) and Plaintiff Colorado Union of Taxpayers, Inc. (Doc. # 77). For the following reasons, the Court dismisses this action for lack of subject matter jurisdiction.

## I.     BACKGROUND

### A.     CAMPAIGN FINANCE LAWS RELATED TO ISSUE COMMITTEES

This case presents a challenge to Colorado's campaign finance laws. Plaintiff Colorado Union of Taxpayers ("CUT") challenges Article XXVIII of the Colorado

Constitution and the Colorado Secretary of State's campaign finance rules related to issue committees. (Doc. # 66 ¶¶ 7–8, 19–21.)

Colorado law requires organizations with "a major purpose" of supporting or opposing a ballot measure to register as an "issue committee" with the Colorado Secretary of State (the "Secretary"). *See* C.R.S. § 1-45-108(3.3) (requiring issue committees to "register with the appropriate officer"). An "issue committee" is defined as "any person . . . or any group . . . (I) [t]hat has a major purpose of supporting or opposing any ballot issue or ballot question; or (II) [t]hat has accepted or made contributions or expenditures in excess of two hundred dollars to support or oppose any ballot issue or ballot question." Colo. Const. art. XXVIII, § 2(10)(a).

Issue committees that accept or make contributions totaling more than $5,000 in a given election cycle must disclose the sources and beneficiaries of their contributions and expenditures, in addition to registering. C.R.S. § 1-45-108(1)(c)(I). Small-scale issue committees are committees that accept or make contributions or expenditures between $200 and $5,000 during an election cycle. C.R.S. § 1-45-108(16.3). Once small-scale issue committees register, they are not required to file any reports of their contributions or expenditures. C.R.S. § 1-45-108(1.5). Issue committees are listed on the Secretary's website alongside the initiatives they support or oppose. C.R.S. § 1-40-124.5(1.7)(b)(II).

## B.  COLORADO UNION OF TAXPAYERS

CUT was founded in 1976 as an educational organization to rate legislative initiatives in Colorado. (Doc. # 76-1 at 67.) CUT "engages in campaigns to inform the

public about issues that it and its donors deem important to the social welfare," including issues that "mainly involve taxes and government spending." (Doc. # 66 at ¶ 27.) CUT's organizational purpose is to "educate people regarding tax issues." (Doc. # 76-1 at 67.) In its articles of incorporation, CUT does not list "ballot issues" as one of its organizational purposes. (*Id.* at 69.)

CUT is not registered as an issue committee or a small-scale issue committee. (*Id.* at 6 ¶ 17; Doc. # 66 at ¶¶ 38, 44.) CUT has never been subject to an enforcement action by anyone alleging that it is an issue committee. (Doc. # 76-1 at 6 ¶¶ 18–19.) Further, Defendants have never taken a position that CUT is an issue committee under Colorado law. (*Id.* at ¶ 18.)

While CUT sometimes takes positions advocating for or against initiatives and referenda, there are years in which it does not take any position on ballot measures. (Doc. # 76-1 at 69.) When CUT supports initiatives, it does so by purchasing radio advertisements, sending text messages, sending newsletters, and making in-kind contributions to issue committees. (*Id.* at 69–71.)

In 2019, CUT spent $5,001 on a radio advertisement opposing a ballot measure. (*Id.* at 83.) In 2020, CUT took a position on five ballot initiatives. (*Id.* at 70–71.) That year, CUT spent approximately $3,500 on advertisements supporting two initiatives. (*Id.* at 73–74.) CUT spent all the money it intended to spend on ballot measure advocacy. (Doc. # 79-1 at 10.) However, CUT indicated that it would revisit purchasing additional advertisements if its financial position changed. (*Id.*) Thus, CUT expressed an intent to continue spending money to support ballot initiatives (*Id.*; *see also* Doc. # 76-1 at 71.)

C.     **PROCEDURAL HISTORY**

CUT and another Plaintiff, Colorado Stop the Wolf Coalition, brought this action against Defendants in September 2020. (Doc. # 1.) CUT sought a preliminary injunction, requesting that the Court block enforcement of the issue committee requirements. (Doc. # 17.) On October 27, 2020, the Court denied the motion for preliminary injunction. (Doc. # 34.) Stop the Wolf Coalition voluntarily dismissed its claims in February 2021. (Doc. ## 58, 59.)

CUT seeks prospective relief from the Court. Specifically, it requests an order from the Court declaring Colorado's issue committee laws unconstitutional. (Doc. # 66 at ¶ 82.) CUT also seeks an injunction prohibiting enforcement of the issue committee laws. (*Id.*) Defendants and CUT now seek summary judgment. (Doc. ## 76, 77.)

## II.     <u>LEGAL STANDARD</u>

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating an absence of a genuine dispute of material fact and entitlement to judgment as a matter of law. *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004). Once the movant meets its initial burden, however, the burden then shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 256 (1986). Ultimately, the Court's inquiry on summary judgment is whether the facts and evidence identified by the parties present "a sufficient disagreement to require submission to a jury or whether it is so

one-sided that one party must prevail as a matter of law." *Id*. at 251–52. Cross-motions

for summary judgment must be treated separately, and the denial of one does not

require the grant of the other. *Atl. Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d

1138, 1148 (10th Cir. 2000) (citation omitted).

### III.   ANALYSIS

Defendants assert that Plaintiff has failed to show a sufficiently concrete and

particularized imminent injury to establish standing in this action. (Doc. # 79 at 3–6.)

Thus, Defendants argue that the Court is deprived of subject matter jurisdiction. (*Id.*)

The Court agrees.

For a federal court to exercise jurisdiction over "cases" and "controversies," a

plaintiff must demonstrate that they have standing to bring the suit under Article III.

*Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016); U.S. Const. art. III, § 2, cl. 1. To

establish standing, Plaintiff must allege that it "(1) suffered an injury in fact, (2) that is

fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be

redressed by a favorable judicial decision." *Id.* The "[f]irst and foremost" of standing's

three elements is "injury in fact." *Spokeo, Inc.*, 578 U.S. at 338 (quoting *Steel Co. v.

Citizens for Better Env't*, 523 U.S. 83, 103 (1998)).

In the First Amendment context, a plaintiff may establish standing where there is

a chilling effect on the exercise of its rights so long as the plaintiff has "an objectively

justified fear of real consequences." *Initiative & Referendum Inst. v. Walker*, 450 F.3d

1082, 1088 (10th Cir. 2006) (quoting *D.L.S. v. Utah*, 374 F.3d 971, 975 (10th Cir.

2004)). A subjective chill is not enough to convey standing; the plaintiff must allege

"specific present objective harm or a threat of specific future harm." *Laird v. Tatum*, 408 U.S. 1, 14 (1972).

The Tenth Circuit has set forth a three-factor "Walker Test" to assist courts in determining whether a plaintiff has standing in "chilled speech claims seeking prospective relief." *Rio Grande Found. v. City of Santa Fe, New Mexico*, 7 F.4th 956, 959 (10th Cir. 2021). A plaintiff seeking prospective relief based on a 'chilling effect' on speech must establish: (1) that they have engaged in the same type of speech in the past; (2) through "affidavits or testimony stat[e] a present desire . . . to engage in such speech"; and (3) a "plausible claim that they presently have no intention to do so because of a credible threat that the statute will be enforced." *Id*. at *2 (quoting *Walker*, 450 F.3d at 1089.) "[T]he question posed by the third prong is not whether someone standing in the plaintiff's shoes would be deterred from speaking, but rather whether the plaintiff in question claims to be deterred and whether such deterrence is plausible." *Rio Grande Found.*, 7 F.4th at 960.

The Tenth Circuit's analysis in *Rio Grande Foundation* is instructive.[1] In that case, the plaintiff challenged a law requiring disclosure of campaign finance information. *Id*. at 958. The sole relief sought by the plaintiff was prospective declaratory and injunctive relief. (Doc. # 79-1 at 23.) The court determined that a party challenging disclosure laws lacks standing to obtain prospective relief where it was not actually chilled from engaging in political speech and instead expressed its intention to speak in

---

[1] *Rio Grande Foundation* was decided on August 3, 2021, during the parties' briefing on the motions for summary judgment. Both parties have had an opportunity to address the court's decision. (Doc. ## 79, 88, and 89.)

future elections. *Rio Grande Found.*, 7 F.4th at 960–61. The plaintiff in *Rio Grande Foundation* indicated that it intended to keep speaking on ballot issues in the future. Thus, the court declined to reach the merits of the case, finding instead that the plaintiff failed to satisfy the third prong of the Walker Test, depriving the court of jurisdiction to consider the plaintiff's as-applied and facial claims. *Id.*

Similarly, in this case, Plaintiff cannot satisfy the third prong of the Walker Test. Plaintiff has failed to set forth a plausible claim that it has no intention of engaging in speech because of a credible threat that the issue committee laws will be enforced against it. Indeed, Plaintiff's Second Amended Complaint demonstrates that it continues to engage in speech despite its knowledge of the issue committee laws in Colorado. (Doc. # 66 at ¶¶ 35–36, 43–45.) CUT affirmed in its complaint that it "has spoken about, opposed, and supported statewide ballot issues in the past and expects to do so in the future." (*Id.* at ¶ 35.)

CUT has repeatedly affirmed that it intends to continue speaking on ballot issues. In its response to Defendants' motion for summary judgment, Plaintiff once again stated that it has "concrete plans" to advocate for or against proposed initiatives "in the future." (Doc. # 80 at 18.) The president of CUT indicated that she doubts "that 2020 will be the last election in which CUT takes a position on ballot issues or seeks to expressly advocate the passage or defeat of a particular ballot issue." (Doc. # 77-1 at 50.) Plaintiff continues to spend money on advertisements and argues in favor of proposed initiatives. (Doc. # 80-1 at 36.) It also intends to advocate in favor of future proposals.

(*Id.*) Without a plausible claim that CUT has no intention to speak in the future, Plaintiff cannot meet the third prong of the Walker Test.

The third prong also fails because CUT has not set forth a credible threat that the issue committee laws will be enforced against it. Plaintiff argues that it has a fear of prosecution. (Doc. # 89 at 10–11.) Plaintiff's fear of prosecution is too speculative at this stage to convey standing. *Rio Grande Found.*, 7 F.4th at 961 n.1.

Further, the alleged fear of prosecution is not credible as required to convey standing. There is no evidence that Plaintiff faces a credible threat of enforcement. Since its founding in 1976, CUT has never faced an enforcement action related to an allegation that it is an issue committee. (Doc. # 76-1 at 6 ¶¶ 18–19.) Indeed, Defendants have never taken a position that CUT is an issue committee under Colorado law. (*Id.* at ¶ 18.) Thus, for this additional reason, Plaintiff fails to satisfy the third prong of the Walker Test because it has not established a credible threat that the issue committee laws will be enforced against it.

Plaintiff argues that because it had standing when it filed this case, it has standing at the summary judgment stage. (Doc. # 89 at 8.) However, federal courts have an obligation to determine whether subject matter jurisdiction exists, and the issue may be raised at any time during the proceedings. *Mitchell v. Lietaer*, No. 18-cv-02071-GPG, 2018 WL 8806514, at *1 (D. Colo. Sept. 20, 2018). Further, once the parties move beyond the preliminary stages of the proceedings, "mere allegations of injury are insufficient" to establish standing at the summary judgment stage. *Brammer-Hoelter v. Twin Peaks Charter Acad.*, 602 F.3d 1175, 1182 (10th Cir. 2010). Thus, a defendant will

prevail on standing grounds if "the record is devoid of evidence raising a genuine issue of material fact that would support the plaintiff's ultimate burden of proving standing." *Id.* (citation omitted). Thus, Defendants have properly raised subject matter jurisdiction at the summary judgment stage.

Plaintiff also argues that it has standing because it has been deterred from speaking out. (Doc. # 89 at 8.) However, Plaintiff's argument is at odds with the evidence submitted by the parties. CUT's president stated that CUT was "hesitant to put our message out there" because of the issue committee laws, but CUT continues to support ballot initiatives, and affirmed its intention to do so in the future. (*Id.* at 47–50.) Plaintiff's choice to continue speaking on ballot initiatives is evidence that it has failed to meet the third prong of the Walker Test. *See Rio Grande Found.*, 7 F.4th at 960 (noting that "a desire not to make that decision is not the same as making an affirmative choice not to speak. And it is precisely such a choice that the third prong of the Walker inquiry demands").

Plaintiff also argues that it has been "deterred from speaking out fully" in the past. Specifically, Plaintiff asserts that it altered its behavior by contributing to a registered issue committee instead of advocating on its own behalf. (Doc. # 89 at 8.) Plaintiff's claim does not confer standing. To satisfy the third prong of the Walker Test, Plaintiff must demonstrate that it presently has no intention to speak *in the future* on ballot initiatives. *See Rio Grande Found.*, 7 F.4th at 960 (quoting *Walker*, 450 F.3d at 1089). Without such a claim, Plaintiff fails to carry its burden of showing an injury-in-fact. In this case, Plaintiff has affirmatively stated an intent to advocate for ballot initiatives in the

future. Thus, CUT's argument that it changed its behavior in the past is insufficient to satisfy the third prong of the Walker Test.

Based on the foregoing, Plaintiff has failed to satisfy its summary judgment burden to submit evidence of an actual or threatened, non-speculative injury. Thus, Plaintiff fails to carry its burden of showing an injury-in-fact. That failure deprives Plaintiff of standing to lodge its claims in this action. *See Rio Grande Found.*, 7 F.4th at 961; *see also Rio Grande Found. v. Oliver*, No. 19-cv-01174-JCH-JFR, 2021 WL 5834228, at *5 (D.N.M. Dec. 9, 2021) (relying upon the Tenth Circuit's decision in *Rio Grande Foundation* to dismiss case at the summary judgment phase for failure to meet a prong of the Walker Test); *Harmon v. City of Norman*, No. 18-cv-0688-HE, 2022 WL 329235, at *2 (W.D. Okla. Jan. 7, 2022) (same).

## IV.   CONCLUSION

For the foregoing reasons, the Court ORDERS as follows:

- Plaintiff's Motion for Summary Judgment (Doc. # 77) is DENIED for lack of standing.

- Defendants' Motion for Summary Judgment (Doc. # 76) is DENIED as MOOT.

- This case is DISMISSED based on Plaintiff's lack of Article III standing.

- Any motions for costs or fees shall be filed within 21 days of the date of this Order.

- The Clerk is directed to enter judgment in favor of Defendants and against Plaintiff on all claims asserted in this case.

DATED:  March 18, 2022

BY THE COURT:

CHRISTINE M. ARGUELLO
United States District Judge