UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Case No. 1:20-cv-02766-CMA-SKC

COLORADO UNION OF TAXPAYERS, INC.

       Plaintiff,

v.

JENA GRISWOLD, Colorado Secretary of State in her
official capacity, and
JUDD CHOATE, Director of Elections, Colorado Department
of State, in his official capacity.

       Defendants.

## THIRD AMENDED COMPLAINT

### NATURE OF SUIT

1. This case is about the right to free speech. Colorado unconstitutionally applies vague and shifting standards to regulate groups that only incidentally discuss ballot issues.

2. Colorado requires non-profit organizations to obtain the government's approval before they are allowed to share their opinions on public policy issues. This is unconstitutional.

3. The First Amendment protects Americans' right to speak freely on matters of public concern without obtaining government blessing or fearing government penalty.

4. The First Amendment also protects Americans' right to associate for lawful purposes with whomever they choose, and to do so without fear of government retaliation.

5. Colorado's campaign finance rules for statewide initiatives and referendums (collectively, "ballot issues") violate all these rights.

6. Plaintiff therefore brings this suit challenging unconstitutional provisions of Article XXVIII of the Colorado Constitution; the Fair Campaign Practices Act, Colo. Rev. Stat. §§ 1-45-101–18 (2020); and the Secretary of State's rules concerning campaign and political finance, Colo. Code Regs. § 1505-6 (2020). It seeks declarations that these laws are unconstitutional, injunctions prohibiting Defendants from enforcing these unconstitutional laws, and compensation for their attorneys' fees and costs in bringing this suit.

## JURISDICTION AND VENUE

7. Plaintiff's claims are asserted under 42 U.S.C. § 1983 (2018).

8. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 (2018) because § 1983 claims present a federal question.

9. Further, the Court has jurisdiction under 28 U.S.C. § 1343(a) (2018) because this action seeks redress for the deprivation of constitutionally protected rights and appropriate relief for the protection of those rights.

10. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) (2018) because Defendants reside in the District and all events or omissions giving rise to Plaintiff's claims occurred here.

## **THE PARTIES**

11. The Colorado Union of Taxpayers (CUT) is a Colorado non-profit organization that is exempt from taxation under I.R.C. § 501(c)(4). Its mission is to educate the public about the dangers of excessive taxation, regulation, and government spending. CUT was founded in 1976.

12. CUT is funded by donations or grants from private individuals, couples, families, and other organizations. It also receives membership dues.

13. Defendant Griswold is the Secretary of State of the State of Colorado. Her duties include administering Colorado's campaign finance laws, such as Article XXVIII, the Fair Campaign Practices Act, and Section 1505-6.

14. Defendant Griswold maintains Colorado's online candidate and committee registration system and receives, investigates, and administratively prosecutes campaign finance complaints.

15. Defendant Choate is the Director of Elections in the Colorado Department of State. In this capacity he manages the Division, including campaign finance complaints and enforcement.

16. When the Secretary of State receives campaign finance complaints, Defendant Choate (or his designee) reviews those complaints for legal and factual sufficiency, and, if found sufficient, conducts further investigation. The Division may refer the complaint to a hearing officer for adjudication.

## GENERAL ALLEGATIONS

I. **LEGAL AND FACTUAL BACKGROUND**

17. Colorado law requires all "issue committees" to register with the Secretary of State and imposes additional requirements regarding the administration and operation of such committees. Issue committees that accept, contribute, or spend more than $5,000 in a single election cycle to support or oppose ballot issues must also report their donors and expenditures.

18. An issue committee is any person or group that either has "a major purpose of supporting or opposing any ballot issue or ballot question" *or* has "accepted or made contributions or expenditures in excess of two hundred dollars to support or oppose any ballot issue or ballot questions." Colo. Const. art. XXVIII, § 2(10)(a).

19. The Secretary of State's rules state that a person or group must meet both the major purpose requirement and the contribution/expenditure amount to be considered an issue committee.

20. A federal court, however, has previously held that Article XXVIII, Section 12 contains no ambiguity: the Colorado Constitution states the requirements in the disjunctive and, therefore, Colorado's law subjects a person or group to issue committee regulation even if they meet just one of the two requirements. The Tenth Circuit has confirmed that the statutory definition takes precedence over the rule.

21. The Colorado General Assembly has defined "a major purpose" as follows:

Support of or opposition to a ballot issue or ballot question that is reflected by:

4

(I) An organization's specifically identified objectives in its organizational documents at the time it is established or as such documents are later amended; or

(II) An organization's demonstrated pattern of conduct based upon it [sic]:

(A)     Deleted by Laws 2022, Ch. 400 (S.B. 22-237), § 1, eff. June 7, 2022.

(B)     Deleted by Laws 2022, Ch. 400 (S.B. 22-237), § 1, eff. June 7, 2022.

(C)     During the combined period of the current calendar year and the preceding two calendar years, making either contributions to one or more statewide Colorado issue committees or direct ballot issue or ballot question expenditures, in either support of or opposition to one or more statewide Colorado ballot issues or ballot questions, that exceeded thirty percent of the total dollar amount of all funds spent by the organization for any purpose and in any location during the entire preceding and current calendar years;

(D)     During the combined period of the current calendar year and the preceding two calendar years, making either contributions to a single statewide Colorado issue committee or direct ballot issue or ballot question expenditures, in either support of or opposition to a single statewide Colorado ballot issue or ballot question, that exceeded twenty percent of the total dollar amount of all funds spent by the organization for any purpose and in any location; or

(E)     Acting as an issue committee's funding intermediary by making contributions to an issue committee from funds earmarked for the issue committee.

Colo. Rev. Stat. § 1-45-103(12)(b) (2023). In other words, an organization has a "major purpose" of advocacy on ballot issues when spending

- at least 30% of its funds over 3 years on ballot issues; or
- at least 20% of its funds over 3 years on a single ballot issue.

22.    To engage in debates about public policy issues and ballot issues fully and effectively, Plaintiff must be able to communicate information and opinions to citizens and voters.

23. Some of Plaintiff's donors do not wish to have their identities reported to the government and they do not wish to have their names, addresses, donation amounts, and occupations made part of a publicly accessible online database such as the one maintained by the Secretary of State.

24. Donors are less likely to donate money to charities if they know their identities, occupations, and donation amounts will be disclosed to the government and made publicly available. This is particularly true in light of the emotionally charged and accusatory political environment surrounding controversial policy issues.

## II. THE COLORADO UNION OF TAXPAYERS

25. CUT engages in campaigns to inform the public about issues that it and its donors deem important to the social welfare. It regularly communicates to the public about these issues. These issues mainly involve taxes and government spending.

26. As part of its social welfare mission, CUT educates the public regarding the fiscal impact and desirability of bills introduced in the Colorado legislature. CUT reviews numerous pieces of legislation each session and issues a "support" or "oppose" rating for each reviewed bill. The organization's ratings are non-partisan and based on whether the bill aligns with CUT's fiscal philosophy.

27. Based on these ratings, CUT, on an annual basis, scores each Colorado legislator based on how his or her votes aligned with CUT's position on the rated bills.

28. CUT has been rating bills and scoring legislators for each session of the Colorado legislature since 1977.

29. Since 1989, CUT has also encouraged legislators and candidates for public office to sign the organization's ten-point pledge regarding fiscal discipline and the proper role of government. The organization publicizes which legislators and candidates have chosen to sign the pledge.

30. CUT also takes positions on ballot issues when appropriate and consistent with CUT's mission. The organization has taken such positions many times and intends to continue doing so in the future, given that ballot issues relating to the expenditure of public funds are a regular feature of statewide elections in Colorado and fall squarely within the scope of CUT's mission.

31. CUT's annual expenditures vary, but generally total around $4,000. This amount includes the cost of CUT's annual newsletter (which usually includes advocacy on ballot issues and ballot questions), and other efforts to publicize its ratings and legislator scores; the cost of its website (which also usually includes issue advocacy), e-mail marketing, and other efforts to communicate with the public; and the cost of in-person membership meetings the organization hosts twice a year.

32. CUT's organizational documents do not specifically identify ballot issue advocacy as an organizational objective.

33. CUT has spoken about, opposed, and supported statewide ballot issues in the past and expects to do so in the future.

34. In 2019, CUT desired to expressly advocate against Proposition CC, a ballot issue which would have allowed the State to retain certain revenue that the Colorado Constitution otherwise would have required be refunded to the taxpayers.  But

the vagueness and uncertainty of Colorado's campaign finance laws, the burdens of registering and reporting as an issue committee, and the potential consequences of non-compliance with the campaign finance regime deterred CUT from speaking out against Proposition CC. Instead, CUT made an in-kind donation in the amount of $5,001 to a registered issue committee that was itself advocating against the ballot issue.

35. CUT did not register as an issue committee in 2019.

36. In the late spring/early summer of 2020, CUT, in its annual newsletter, declared its opposition to three ballot issues that had already qualified for the 2020 ballot. It also declared its support for two other measures that, at that time, had not yet qualified for the ballot but were gathering signatures. The two potential 2020 ballot issues for which CUT had previously declared its support eventually qualified for the ballot in August 2020 and were designated Propositions 116 and 117. Proposition 116 required voter approval for certain so-called "enterprises" that were excluded from the voter approval requirements of the state's Taxpayers Bill of Rights. Proposition 117 reduced Colorado's state income tax rate from 4.63% to 4.55%. As the election approached, CUT decided to do more to present its argument in favor of Propositions 116 and 117. Accordingly, CUT spent $3,495 on radio ads arguing in favor of these two ballot issues.

37. CUT did not register as an issue committee in 2020.

38. The $3,495 CUT spent in favor of Propositions 116 and 117 was less than 0.3% of the amount registered issue committees reported spending in favor of those

ballot issues and only about 0.09% of what issue committees reported spending in the full debate over those issues in the runup to the election.

39. In 2021, CUT's total revenue was $6,435.80. Of that, it spent $1,443.73 on its annual newsletter. The 2021 newsletter included advocacy on three initiatives that had not yet qualified for the ballot at the time of the newsletter's publication: Initiatives 19, 25, and 27. CUT favored Initiative 19, which proposed a constitutional amendment that would prevent disbursements of money from the state treasury except upon appropriations made by law or otherwise authorized by law, and encouraged readers of the newsletter to "laud[] the merits of this Amendment." CUT also favored Initiative 27, which reduced property tax rates, and encouraged readers "to help this measure win at the ballot box." Finally, CUT opposed Initiative 25, a tax increase.

40. CUT did not register as an issue committee in 2021.

41. In 2022, CUT's total revenue was $2,599.50. Of that, it spent $1,876.19 on its annual newsletter. The 2022 newsletter included advocacy on a single ballot issue: Colorado Ballot Proposal 2021-2022 #0. This proposal authorized the Colorado government to provide free meals to all public school students. CUT opposed this proposal because it believes "[f]eeding children is not [a] proper role of government" but for the children's parents, and the program would cost over $100 million per year, to be paid for via "a significant tax increase." CUT encouraged readers of its newsletter to "VOTE NO!"

42. CUT did not register as an issue committee in 2022.

43. In 2023 so far, CUT's total revenue is $2,432.36. Of that, it has spent $2,206 on its annual newsletter and another $384 on its website, both of which contain advocacy on a single ballot issue: Proposition HH. Proposition HH would require local districts to reduce property taxes and backfill the revenues lost from these reduced rates with money that would have been refunded to taxpayers under the Taxpayer Bill of Rights. It would also create a new, increased cap on state revenue that can be collected and spent. CUT opposes this ballot issue and encourages readers of its newsletter to "Vote No on HH."

44. CUT has not registered as an issue committee in 2023 and has no plans to do so.

45. Over the last three years—from 2021 through 2023—CUT's total revenues amount to $11,467.66. Its expenditures on its newsletter alone, which includes advocacy on ballot issues and ballot questions, amount to $5,346.71, or 46.6% of its revenues. Under the new statutory definition, this means CUT arguably has a "major purpose" of engaging in issue advocacy. *See* Colo. Rev. Stat. § 1-45-103(12)(b)(II)(C) (2023). CUT also arguably "made contributions or expenditures in excess of two hundred dollars to support or oppose any ballot issue or ballot question." Colo. Const. art. XXVIII, § 2(10)(a)(II). Either way, CUT arguably qualifies as an issue committee under Colorado law based on its expenditures over the last three years. *See* Colo. Const. art. XXVIII, § 2(10)(a).

46. CUT does not know what its total revenues will be in 2024, but it plans to spend at least 30% on its newsletters, which will likely include issue advocacy, as CUT

10

has done in the past. Given the importance of ballot issues and their elevated noticeability in a presidential election year, moreover, CUT is prepared to spend more than $5,000 on issue advocacy in 2024, depending on the ballot issues and ballot questions that arise.

47. CUT does not plan to register as an issue committee in 2024.

48. To CUT, the value of issue advocacy is not just in the passage or defeat of certain ballot issues. CUT certainly desires to see certain issues pass and others fail. However, as a membership organization, CUT believes that it is also important that it be seen as an organization that is engaged in the public debate on issues that are central to its taxpayer advocacy mission.

49. Further, CUT has established a reputation and brand over the past forty-three years, and believes that direct communications from CUT have more force and effect than contributions to other organizations registered as issue committees.

50. Therefore, CUT prefers to speak and sees value in speaking on its own behalf regarding ballot issues, rather than surrendering control to a different organization.

51. CUT would incur substantial cost in time and money to provide detailed reports to the government regarding their donors and expenditures.

52. CUT credibly fears it will face enforcement action. First, anyone can file a complaint for violating the requirements imposed on both small-scale and regular issue committees, meaning political opponents trying to gain an edge on hotly contested ballot issues could file a complaint against CUT. Colo. Rev. Stat. § 1-45-111.7(2)(a). For

this reason, CUT views itself as an easy target for such complaints. Second, Defendants have brought an enforcement action against a similarly-situated entity: Unite for Colorado. Unite for Colorado spent over $2 million advocating on ballot measures in 2020, two private individuals filed a complaint against it for allegedly violating the requirements for regular issue committees, and the Deputy Secretary of State ultimately denied the motion to dismiss the Secretary of State's office filed in that case, partly because Unite for Colorado's expenses constituted a considerable or principal portion of the organization's expenses. The same is true for CUT, whose expenses on issue advocacy have accounted for 46.6% of its revenues over the last three years.  Finally, Defendants have not disavowed enforcement against CUT.

## FIRST CAUSE OF ACTION
## 42 U.S.C. § 1983 & U.S. CONST. AMEND. 1 DEPRIVATION OF FREE SPEECH RIGHTS

53. Plaintiff reasserts the allegations in ¶¶ 17–52 as if fully set out herein.

54. State election laws that regulate speech or association must be narrowly drawn to advance a compelling state interest.

55. Colorado's issue committee rules are not narrowly drawn.

56. Under federal law, even organizations expressly advocating the election or defeat of a particular candidate for office can only be regulated where such speech is *the* major purpose of the organization.

57. Colorado, however, regulates speech where express advocacy is only one of several purposes an organization might have.

12

58. Also, the State has imposed its speech regulation regime not just in the context of candidate advocacy, but with regard to ballot issue advocacy, where the State's interest is comparatively less.

59. Colorado's "a major purpose" standard subjects organizations to campaign finance regulation even when the majority of their efforts have nothing to do with express advocacy. Colorado has thus swept numerous organizations into its campaign finance regulatory regime that it may not constitutionally regulate.

60. The government lacks an interest in regulating the speech of a non-profit organization and requiring disclosure of its donors where communication with voters is not *the* major purpose of that organization.

61. Furthermore, Colorado lacks a compelling interest in regulating the speech of Plaintiff.

62. The only interest justifying regulation in the ballot issue context is the public's informational interest (i.e., allowing voters to "identify those who (presumably) have a financial interest in the outcome of the election," *Sampson v. Buescher*, 625 F.3d 1247, 1259 (10th Cir. 2010)).

63. That informational interest is insufficient at the $200 level. The registration requirement essentially imposes a licensing regime on anything but the most minimal speech regarding ballot issues, and it does so without providing the public with any meaningful information. The registration requirement is therefore unconstitutional on its face.

64. Furthermore, the disclosure requirement is unconstitutional as applied here, where (1) CUT's expenditures would be a comparatively minor part of the campaign for or against any ballot issue, (2) CUT's interest in the issue would be apparent to any reasonably informed voter even without the regulatory regime, and (3) CUT has a history of engagement in public policy outside of express advocacy for or against ballot issues.

**SECOND CAUSE OF ACTION**
**42 U.S.C. § 1983 & U.S. CONST. AMEND. 14**
**DEPRIVATION OF DUE PROCESS AND EQUAL PROTECTION**
**(ARBITRARINESS)**

65. Plaintiff reasserts the allegations in ¶¶ 17–52 as if fully set out herein.

66. Even if the government has an interest in requiring issue committees to disclose their donors at some level, Colorado's $5,000 level for "small scale issue committees" is arbitrary and lacks any rational basis.

67. In 2012, the Secretary of State promulgated a regulation that raised the disclosure threshold to $5,000. The Secretary of State's rule was not based on any testimony or other evidence indicating a compelling need for disclosure at $5,000.

68. The $5,000 threshold in the 2012 regulation was later declared unconstitutional under the Colorado Constitution. Nonetheless, the Colorado General Assembly adopted the identical threshold of $5,000.

69. There are no legislative findings in Senate Bill 16-186 (the bill that added the $5,000 reporting threshold) or in House Bill 19-1318 (which reenacted the threshold to remove a sunset requirement) to indicate why the General Assembly chose $5,000.

70. Given the important speech and associational rights at stake, the legislature's arbitrary choice of a $5,000 threshold violates Plaintiff's rights to due process of law and equal protection of the laws.

### THIRD CAUSE OF ACTION
### 42 U.S.C. § 1983 & U.S. CONST. AMEND. 1 DEPRIVATION OF FREE SPEECH (OVERBREADTH)

71. Plaintiff reasserts the allegations in ¶¶ 17–52 as if fully set out herein.

72. CUT announced its support for the ballot issues that eventually became Propositions 116 and 117 before those issues qualified for the ballot, while petition signatures were being collected for "Initiative 306" and "Initiative 295," respectively. CUT also announced its opposition to Initiatives 19, 25, and 27 in 2021 while signatures were being collected.

73. Colorado law regulates organizations that discuss proposed ballot issues, regardless of whether that proposal will appear on Colorado's ballot, and well before a proposed measure is certified to the ballot.

74. Colorado's application of its campaign finance regulations to proposed ballot measures has included hundreds of proposed ballot measures that were never certified for the ballot.

75. As a consequence, Colorado applies its campaign finance regulations to people who speak out on proposed measures that never make the ballot.

76. Whatever interest the State may have in regulating (a) speech about measures that actually appear on the ballot or (b) the spending and activities of organizations that are actually circulating petitions to qualify a measure for the ballot,

such interest does not extend to speech by third parties about measures that may never appear on any ballot.

77. Colorado campaign finance regulations are unconstitutionally overbroad, because they regulate third-party speech about proposed ballot measures that may or may not appear on any ballot.

## PRAYER FOR RELIEF

78. Wherefore, Plaintiff seeks the following relief:

    a. a declaration that the $5,000 threshold for expenditure reporting and donor disclosure is unconstitutionally arbitrary;

    b. a declaration that Colorado's campaign finance registration requirements (and attendant issue committee formation requirements) are unconstitutional as applied to issue committees that spend no more than $5,000 on advocacy regarding ballot issues;

    c. a declaration that Colorado has no valid interest in regulating third- party speech about ballot issues before such issues have actually qualified for the ballot;

    d. a declaration that Plaintiff need not register as an issue committee, report its expenditures, or disclose its donors;

    e. an injunction prohibiting Defendant Griswold from accepting complaints or otherwise enforcing any rule or law based on the "major purpose" test where the subject of the complaint either (a) has a history of public policy engagement outside of the ballot issue context; or (b) has not spent the majority of its funds on express advocacy of the passage or defeat of a ballot issue;

  f. an injunction prohibiting Defendant Choate from investigating or referring complaints or otherwise enforcing any rule or law based on the "major purpose" test where the subject of the complaint either (a) has a history of public policy engagement outside of the ballot issue context; or (b) has not spent the majority of its funds on express advocacy of the passage or defeat of a ballot issue;

  g. an injunction limiting Defendants' attempts to regulate speech and spending on proposed-but-not-yet-qualified ballot issues to expenditures by the sponsoring issue committee that are in direct pursuit of qualification for the ballot;

  h. reasonable attorneys' fees (including expert fees) and costs under 42 U.S.C. § 1988 (2018); and

  i. such other relief as the Court finds just and proper.

Dated:  October 23, 2023.                    Respectfully submitted,


                                             *s/ Daniel N. Nightingale*
                                             Daniel N. Nightingale
                                             Wheeler Trigg O'Donnell LLP
                                             370 Seventeenth Street, Suite 4500
                                             Denver, CO 80202
                                             Telephone: 303.244.1800
                                             Facsimile:  303.244.1879
                                             Email:  nightingale@wtotrial.com

                                             Attorney for Plaintiff
                                             Colorado Union of Taxpayers

## CERTIFICATE OF SERVICE (CM/ECF)

I HEREBY CERTIFY that on October 23, 2023, I electronically filed the foregoing **THIRD AMENDED COMPLAINT** with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following email addresses:

- **Michael T. Kotlarczyk**
  Mike.kotlarczyk@coag.gov, carmen.vanpelt@coag.gov

- **Peter G. Baumann**
  Peter.baumann@coag.gov, carmen.vanpelt@coag.gov

- **Christopher P. Beall**
  christopher.beall@coag.gov, maria.ruiz@coag.gov, christopherbeall@comcast.net

- **Timothy Robert Carwinski**
  tcarwinski@reedsmith.com, tguzman@reedsmith.com, timothy.carraher@gmail.com, bsutherland@reedsmith.com

- **Scott E. Gessler**
  sgessler@gesslerblue.com, jbila@gesslerblue.com

- **Megan Patricia McAllen**
  mmcallen@campaignlegalcenter.org


*s/ Mary Davis*
Mary Davis